IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 23, 2007 Session

ELLIS JUNIOR BURNETT[1] v. STATE OF TENNESSEE

Direct Appeal from the Circuit Court for Cannon County
No. F-24006    Don R. Ash, Judge

No. M2007-00572-CCA-R3-PC - **Filed Februry 29, 2008**

In 2001, a Cannon County jury convicted the Petitioner, Ellis Junior Burnett, of aggravated arson,[2] and he received a twenty-three-year sentence. The conviction was affirmed by this Court on direct appeal. Subsequently, the Petitioner filed a petition for post-conviction relief, which was heard by the post-conviction court and denied. The Petitioner now appeals, claiming the post-conviction erred when it: (1) failed to give him a full and fair post-conviction evidentiary hearing; (2) denied his claim of ineffective assistance of counsel; (3) denied his claim that the trial court failed to properly instruct the jury as to lesser included offenses; and (4) denied his claim that the trial court failed to properly instruct the jury on circumstantial evidence. After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court. J.C. MCLIN, J., concurred in the results only. JOSEPH M. TIPTON, P.J., filed a concurring opinion.

Darwin C. Colston, Murfreesboro, Tennessee, for the Petitioner, Ellis Junior Burnett.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Benjamin A. Ball, Assistant Attorney General; William Whitesell, District Attorney General; and David Puckett, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

---

[1] We note that the Petitioner's surname is spelled both "Burnett" and "Burnette" in the record.

[2] The appellant was previously convicted of aggravated arson based upon the facts recounted herein; however, his previous conviction was reversed and remanded for a new trial. *See State v. Ellis Junior Burnett*, No. M1999-00179-CCA-R3-CD, 2000 WL 62110, at *1 (Tenn. Crim. App. At Nashville, Jan. 26, 2000).

# I. Facts

In 2001, the Petitioner was found guilty of aggravated arson and sentenced to twenty-three years in prison. The evidence presented in that case, as summarized by this Court, included:

> In January 1996, the appellant was indicted by the Cannon County Grand Jury for aggravated arson. In the light most favorable to the State, the proof adduced at trial revealed that at approximately 9:00 p.m. on November 8, 1995, Melissa Burnett was baking cupcakes in the kitchen of her home at 549 Hollow Springs Road in Cannon County while her husband, Tony, and her six-year-old son, Thomas, slept in their respective bedrooms. After hearing a car door slam, Melissa looked out of her kitchen door and saw a red glow "going through my yard and across the road." Melissa believed that the red glow was fire. She went to look out the door of her living room and saw that the fire was burning on the gas meter of her house, trailing through the road, and running across the street to a tree. Melissa began to panic and ran to wake her husband.

> Tony and Melissa then ran outside to combat the flames. The area that was burning smelled of gasoline. Once outside, Tony observed "a line of fire from behind a tree across the road all the way under my gas meter." The gas meter and the side of the house were in flames. The fire extended from the side of the Burnetts' home and across the road near a field of high grass. As they were fighting the fire, the Burnetts saw a small, green Datsun hatchback being driven on the road in front of their house. The vehicle had two occupants. The driver did not stop the vehicle to investigate the fire. In fact, the driver drove through the flames that crossed the road and left the area. Tony, who was an officer with the Woodbury Police Department, recognized the vehicle as belonging to Timmy Elkins, an individual Tony had recently arrested for drugs.

> While the Burnetts were fighting the fire with water from a garden hose and a towel, Tony called Officer Kevin Mooneyham, whom he knew was on duty at that time, and requested that Officer Mooneyham find and detain the occupants of the green Datsun for questioning. Tony also called David Pruitt, a deputy with the Warren County Sheriff's Department, to request that he stop the vehicle if he encountered it before Officer Mooneyham.

> Officer Mooneyham ultimately stopped the green Datsun. The appellant emerged from the front passenger side of the vehicle and asked Officer Mooneyham "what was going on." Officer Mooneyham was unable to answer because he did not know at that time why he had been requested to stop the vehicle. As Officer Mooneyham approached the appellant, he detected a "moderate odor of gasoline" coming from the vehicle. Additionally, Officer Mooneyham observed a gas can in the rear compartment of the vehicle.

Upon approaching the vehicle, Officer Mooneyham recognized that the driver was Wynona Parker. Officer Mooneyham knew that Parker's driver's license had been revoked; therefore, he arrested her for driving on a revoked license.

Deputy Pruitt and Tony Burnett arrived on the scene while Officer Mooneyham had the occupants of the green Datsun detained. Tony saw his uncle, the appellant, near the green Datsun. The two men engaged in a verbal altercation, and Deputy Pruitt separated them. Shortly thereafter, Tony observed a two-gallon gas can in the rear compartment of the vehicle. He noted that the nozzle of the gas can "was wet as if it had been used that night." Tony believed that the appellant was involved in the fire "[b]ecause I knew that a fire bug always returns back to the scene, and he was in that car and that jug was in that backseat and it appeared as if it had just been used, and he was a passenger in that vehicle."

A tow truck arrived to impound the green Datsun. The gas can was not removed from the vehicle when it was impounded. Deputy Pruitt drove the appellant home. Deputy Pruitt noticed that the appellant's tennis shoes and his pants below the ankle were wet. Additionally, when the appellant exited the vehicle, Deputy Pruitt noticed wet spots and grass seeds where the appellant's feet had been.

The next day, Tom Carmooch, an agent with the Tennessee Bureau of Investigation (TBI), began investigating the fire. Agent Carmooch went to the Burnetts' home and noticed that "[a]cross the road in front of [the] house was a large tree, and there was a black trail or mark from that tree, around behind it, across the road, and going to the gas meter or the gas system, to the heating unit of [the] house." Later that day, Agent Carmooch went to the impound lot and obtained the gas can from the rear compartment of the green Datsun. The gas can was approximately half-full of fuel. Shortly thereafter, Agent Carmooch relinquished the gas can and the investigation to TBI arson investigator Larry Dauberman.

Agent Dauberman testified that during the course of his investigation, he and Agent Carmooch went to the appellant's home. Agent Dauberman testified that the appellant insisted that he was innocent and that Elkins, the owner of the green Datsun, was the perpetrator of the crime. Thereafter, following the appellant's indictment by the Grand Jury, the appellant agreed to cooperate with a plan designed to get Elkins to incriminate himself. Agent Dauberman, representing the District Attorney General's office, and David Dinkins, an investigator with the Public Defender's office, coordinated the operation.

A wireless transmitter was placed on the appellant, and he then went to Elkins' home. Agent Dauberman instructed the appellant on the type of questions he should ask and the information that was needed to incriminate Elkins in the fire. The appellant was wired for sound on two occasions, and, thereafter, he went to Elkins'

3

residence. Although the appellant was explicitly instructed to question Elkins regarding the fire, the appellant failed to do so on both occasions. Instead, the appellant asked Elkins "social-type questions" and discussed his impending arson charges, noting his need for money and an attorney. Dinkins recalled that on the second occasion, while they were discussing the appellant's legal problems, Elkins informed the appellant, "I'm going to keep my mouth shut." The appellant responded, "I appreciate it." Further attempts to use the appellant to gain information against Elkins were abandoned.

Additionally, Agent Dauberman testified that when he went to the Burnetts' home he saw the black burn trail left by the fire. He concluded that the trail was indicative of the use of a liquid accelerant. The accelerant appeared to be concentrated around the gas meter. The left end of the home had a black smoke stain that was ten to twelve feet high, which stain indicated that the fire had produced black soot common to fire from "hydro-carbon based fuel" such as gasoline or kerosene. Agent Dauberman took a sample of the soil from around the gas meter and submitted the soil sample and a fuel sample from the gas can found in the green Datsun to the TBI crime laboratory for testing. The gas can was also tested for fingerprints.

At the TBI crime laboratory, no viable fingerprints were found on the gas can because it was constructed of "very textured, hard plastic" that was not conducive to the lifting of latent fingerprints. Agent Sandra Evans, a forensic scientist with the TBI crime laboratory, tested the soil sample and the fuel sample. Both samples contained "gasoline range petroleum distillate" and "kerosene range distillate." The testing revealed that both samples contained "a very strong gasoline presence and a very weak kerosene presence." Agent Evans opined that the samples from the soil and from the gas can were "very similar."

*State v. Ellis Junior Burnett*, No. M2001-01495-CCA-R3-CD, 2005 WL 1330840 (Tenn. Crim. App., at Nashville, Jun. 6, 2005), *no Tenn. R. App. P. 11 application filed* (footnotes omitted).

At the Petitioner's post-conviction hearing, the following evidence was presented: the Petitioner testified that his trial counsel ("Counsel") is now deceased. The Petitioner stated that Counsel did not impeach the Petitioner's nephew, Tony Burnett, using the nephew's prior testimony, concerning a discrepancy about the direction the green car was driving. Additionally, the Petitioner claimed that, although he never waived his right to a jury instruction on lesser-included offenses, the trial court did not instruct the jury on lesser-included offenses. The Petitioner said Counsel told him they could raise that issue on appeal. Moreover, the Petitioner testified that Counsel did not challenge a juror, who was his ex-wife's first cousin, and the Petitioner believed the juror remained hostile towards him. The Petitioner also said the trial court did not instruct the jury on circumstantial evidence. Finally, the Petitioner explained that, at the time of the arson, he was riding in a car with another person and shooting pool at the local lounge. He further elaborated that he had the gas can

4

in his car because the car's gas gauge did not work and that the can had not been used since he borrowed it from a friend.

The post-conviction court denied the petition for relief, finding that the Petitioner failed to prove by clear and convincing evidence that Counsel's efforts were deficient. The trial court stated, "I'm going to find that you've not carried your burden. . . . I'm going to find that [Counsel's] services were not deficient in any manner." It is from this order denying relief that the Petitioner now appeals.

## II. Analysis

The Petitioner claims the post-conviction court committed reversible error when it: (1) failed to give him a full and fair post-conviction evidentiary hearing; (2) denied his claim of ineffective assistance of counsel; (3) denied his claim that the trial court failed to properly instruct the jury as to lesser-included offenses; and (4) denied his claim that the trial court failed to properly instruct the jury on circumstantial evidence.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

### A. Full and Fair Post-Conviction Hearing

The Petitioner claims the post-conviction court failed to give him a full and fair evidentiary hearing. At oral argument, the Petitioner clarified that he could not present his full case to the post-conviction court because the court cut off his argument in order to rule. The State counters that the Petitioner failed to show that he did not receive a full and fair evidentiary hearing, especially since the Petitioner chose not to present further proof.

According to the Post-Conviction Procedure Act, referring to the issue of a ground for relief having been previously determined, "a full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced evidence." T.C.A. § 40-30-106(h) (2006). The trial transcript of the

end of the evidentiary portion of the post-conviction hearing shows this exchange between the Petitioner's attorney and the post-conviction court:

> **The State:** That's all. [finishing his cross-examination of the Petitioner]
> **The Court:** Other questions?
> **Defense Attorney:** None, Your Honor.
> **The Court:** Do you have any other proof?
> **Defense Attorney:** Your Honor, unfortunately since [trial counsel] is deceased I can't put him on. So I'm stuck with my client and arguing the record.
> **The Court:** Okay. All right. [Petitioner], I'm going to deny your motion for post conviction relief.

Considering the inherent finality of the defense attorney's statement that he was "stuck with [his] client and arguing the record," and his admission that he did not have any more questions for his client, we fail to see how the Petitioner did not receive a full and fair evidentiary hearing from the post-conviction court. The record indicates that the Petitioner had an opportunity to call witnesses and present evidence. Although the Petitioner's post-conviction attorney asserts on appeal that he did not "argue the record" because the post-conviction court precluded him from doing so, we conclude that the Petitioner nonetheless received a full and fair evidentiary hearing from the post-conviction court. The Petitioner is not entitled to relief on this issue.

### B. Ineffective Assistance of Counsel

The Petitioner claims that the trial court erred by denying his claim that he did not receive the effective assistance of counsel at trial. The Petitioner's specific grievances include Counsel's: (1) failure to disclose a confession of a third party to the jury; (2) failure to impeach a State witness; (3) failure to propose jury instructions with lesser included offenses; (4) failure to exclude a biased juror; and (5) failure to require the definition of "circumstantial evidence" in the jury instructions.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

6

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### 1. Third Party Confession

The Petitioner claims that Counsel failed to disclose the confession of a third party to the jury. The Petitioner claims that Timmy Elkins admitted to Tony and Kenneth Barrett that Elkins set the victim's house on fire. The Petitioner testified that neither Tony nor Kenneth Barrett were

7

present at his trial, but there was testimony at the trial about Elkins's confession. The State argues that the Petitioner failed to present testimony from Tony or Kenneth Barrett, and, therefore, did not prove prejudice. We agree with the State that the Petitioner did not present testimony of either Tony or Kenneth Barrett to support his contention of a third party confession. Without that testimony, the Petitioner has not met his burden of proving his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); *Owens v. State*, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999) ("For purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit."). We also conclude that the Petitioner raised an identical claim on direct appeal, and, thus, it has been previously determined. *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995) ("A petitioner may not relitigate a previously determined issue by presenting additional factual allegations. We should not encourage post-conviction petitioners to invent new facts to revive an issue which was unfavorably decided."). The Petitioner is not entitled to relief on this issue.

### 2. Impeaching a Witness

The Petitioner claims Counsel failed to impeach a witness at trial, Tony Burnett, about the direction in which the green car was traveling. The State argues that the Petitioner never showed the importance of the impeaching testimony, and thus failed to meet his burden. We agree. In his brief, the Petitioner alleges that Counsel erred on this point and that, if the discrepancy had been pointed out, the witness would have lost his credibility. However, the Petitioner does not provide any evidence of this allegation. According to *Owens v. State*, "For purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999). The Petitioner has not shown by clear and convincing evidence that any prejudice to the Petitioner resulted from Counsel's failure to impeach Tony Burnett's testimony as to the direction the green car was traveling. The Petitioner is not entitled to relief on this issue.

### 3. Jury Instructions on Lesser Included Offenses

The Petitioner claims Counsel was deficient at trial in failing to request that lesser-included offenses be included in the jury charge. When the Petitioner was convicted in 2001, the trial court was required to "instruct the jury on all lesser offenses if the evidence introduced at trial [was] legally sufficient to support a conviction for the lesser offense." *State v. Bolden*, 979 S.W.2d 587, 593 (Tenn. 1998); *see* Tenn. Code Ann. § 40-18-110 (1997). The Tennessee Supreme Court noted that "the trial court's obligation under this statute is mandatory, provided there is sufficient evidence for a rational trier of fact to find a defendant guilty of a lesser offense." *Bolden*, 979 S.W.2d at 593. Under this earlier version of Tennessee Code Annotated section 40-18-110, as compared to the current version which took effect in 2002, a defendant was not required to request a lesser-included instruction to raise the trial court's failure to give such an instruction as an error on appeal. *See State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006).

Because the trial court had a mandatory duty to instruct the jury on lesser included offenses

regardless of a request to do so from the defendant, this court has previously concluded that defense counsel was not ineffective for failing to request an instruction on a particular lesser included offense. *Jerome Sawyer v. State*, No. 2005-01813-CCA-R3-PC, 2007 WL 778828, at *20 (Tenn. Crim. App. at Jackson, Mar. 15, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007); *Chivous Robinson v. State*, No. E2005-01036-CCA-R3-PC, 2006 WL 1381511, at *6 (Tenn. Crim. App., at Knoxville, May 19, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006); *Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC, 2005 WL 901130, at *5 (Tenn. Crim. App., at Nashville, Apr. 19, 2005), *perm. app. denied* (Tenn. Oct. 17, 2005); *see Larry Johnson v. State*, W2006-00345-CCA-R3-PC, 2007 WL 2120184, at *10 (Tenn. Crim. App., at Jackson, July 24, 2007), *perm. app. denied* (Tenn. Dec. 26, 2007). Thus, the Petitioner is not entitled to relief on this issue.

### 4. Challenging a Biased Juror

The Petitioner claims Counsel was ineffective because he did not challenge a biased juror. The State argues that the Petitioner did not present this juror at the post-conviction hearing, and so he failed to prove any prejudice. We agree with the State.

According to the Petitioner's testimony at the post-conviction hearing, Juror Timmy Richards was the Petitioner's ex-wife's cousin. The Petitioner thought that Juror Richards had "some animosity" over the divorce. When describing his discussion with Counsel about Juror Richards, the Petitioner said:

> I was looking at Timmy when I was talking to [Counsel] and I said that's some of my kin folks through marriage right there. And Timmy Richards was sitting there. He was smiling, you know, and everything. And [Counsel] told me, he said he'd probably be for you more than he'd be against you, you know, by him smiling. So I never did say anything else.

At the post-conviction evidentiary hearing, the Petitioner did not call call Juror Richards to testify concerning the Petitioner's claim that Richards had "some animosity" toward the Petitioner. Without Richards's testimony, there is no substantiation of the Petitioner's claim. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("[I]f a petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness [at the evidentiary hearing] who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called."); *Owens v. State*, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999) ("For purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit."). The Petitioner has not proven any prejudice from Counsel's decision not to challenge Juror Richards. The Petitioner is not entitled to relief on this issue.

### 5. Jury Instruction on Circumstantial Evidence

The Petitioner claims that Counsel was ineffective for failing to request jury instructions on

9

circumstantial evidence. Specifically, he argues that, since most of the evidence against him was circumstantial, the outcome would have been different if the jury instruction had been given. The State counters that the Petitioner waived this issue.

Direct evidence proves the existence of a fact at issue without an inference or presumption. *State v. Thompson*, 519 S.W.2d 789, 792-93 (Tenn. 1975). Circumstantial evidence requires an inference to prove a fact at issue. *Id.* The Petitioner has a constitutional right to a correct charge of the law and when all of the evidence is circumstantial, he has a right to an instruction on circumstantial evidence. *Id.* at 792. When the evidence is both direct and circumstantial evidence, then a circumstantial evidence instruction must only be given if it is requested. *Monts v. State*, 379 S.W.2d 34, 40 (Tenn. 1964).

The Record reflects that jury instructions defining direct and circumstantial evidence were given; however, the trial court omitted paragraph four of the Tennessee Pattern Instructions (T.P.I.) section 42.03. That paragraph addresses circumstantial evidence more fully by explaining to jurors what they need to consider when using only circumstantial evidence to determine guilt:

> When the evidence is made up entirely of circumstantial evidence, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; the facts must exclude every other reasonable theory or hypthesis except that of guilt; and the facts must establish such a certainty of guilt of the defendant as to convince the mind beyond a reasonable doubt that the defendant is the one who committed the offense. It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary to constitute the crime charged. Before a verdict of guilty is justified, the circumstances, taken together, must be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion and producing in effect a moral certainty that the defendant, and no one else, committed the offense.

T.P.I. § 42.03. We agree that the facts in this case are circumstantial, but we point out that the facts strongly point to the Petitioner. As this Court summarized on the Petitioner's direct appeal:

> [The Petitioner] was seen in the area at the time of the fire. The vehicle he was in contained a gas can that was half-full of fuel. The vehicle also smelled strongly of gasoline. The fuel in the can was very similar to the fuel used to start the fire. Also the nozzle of the gas can was wet, an indication that fuel had recently been poured from it. The [Petitioner's] pants and shoes were wet and were studded with grass seeds. The field across from the Burnetts' home was filled with tall grass that had gone to seed.

Considering the strength of the evidence, albeit circumstantial, we find the omission of paragraph

four of T.P.I. § 42.03 was harmless beyond a reasonable doubt. Because we find this omission harmless, we conclude that Counsel was not deficient in his representation of the Petitioner. As such, the Petitioner is not entitled to relief on this issue.

### C. Jury Instructions on Lesser Included Offenses

The Petitioner claims the trial court erred by not instructing the jury on lesser included offenses. The State counters that the Petitioner waived this issue. We agree with the State.

Under the provisions of the Post-Conviction Procedure Act, certain claims are considered waived because they could have been presented on direct appeal:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless: (1) the claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of the right; or (2) the failure to present the ground was the result of state action in violation of the federal or state constitution.

T.C.A. § 40-30-106(g) (2006). Because the Petitioner could have presented this issue on his direct appeal, it is waived. The Petitioner is not entitled to relief on this issue.

### D. Jury Instructions on Circumstantial Evidence

The Petitioner claims the trial court erred by not instructing the jury on circumstantial evidence. After reviewing the Petitioner's direct appeal, we recognize that he raised this issue on direct appeal and this Court denied relief because he failed to include the jury instructions with his appeal. While the Petitioner has now included the jury instructions in the record on this appeal, because he raised this issue on direct appeal, it has been previously determined. *Cone*, 927 S.W.2d at 581-82 ("A petitioner may not relitigate a previously determined issue by presenting additional factual allegations. We should not encourage post-conviction petitioners to invent new facts to revive an issue which was unfavorably decided."). The Petitioner is not entitled to relief on this issue.

### III. Conclusion

We conclude that the Petitioner received a full and fair post-conviction evidentiary hearing. The post-conviction court properly determined that none of the Petitioner's claims have merit. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

11